**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

MARK D. SAROFF

      Debtor

Case No. 09-33666

**MEMORANDUM ON
TRUSTEE'S OBJECTION TO CLAIM**

**APPEARANCES:**    LAW OFFICES OF MAYER & NEWTON
     John P. Newton, Jr., Esq.
     1111 Northshore Drive
     Suite S-570
     Knoxville, Tennessee 37919
     Attorneys for Chapter 7 Trustee

       LEWIS, KING, KRIEG & WALDROP, P.C.
     M. Edward Owens, Jr., Esq.
     John J. Britton, Esq.
     One Centre Square
     620 Market Street
     Fifth Floor
     Knoxville, Tennessee 37902
     Attorneys for Claimant Lewis, King, Krieg & Waldrop, P.C.

       THE GILLESPIE LAW FIRM
     Daniel Gillespie, Esq.
     618 South Gay Street
     Suite L-2
     Knoxville, Tennessee 37902
     Attorneys for Debtor

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Proof of Claim No. 21-1 Filed by Lewis, King, Krieg & Waldrop, P.C. (Objection to Claim) filed on November 5, 2013, by John P. Newton, Jr., Chapter 7 Trustee (Chapter 7 Trustee), and Lewis, King, Krieg & Waldrop, P.C.'s Response in Opposition to Trustee's Objection to Claim 21-1 (Response to Objection to Claim) filed by the claimant, Lewis, King, Krieg & Waldrop, P.C.[1] (Lewis King), on December 4, 2013.

The trial was held on March 10, 2014. The record before the court consists of sixty-eight stipulated exhibits and the testimony of four witnesses, Richard L. Hollow, John Buckingham, John L. Britton, and John P. Newton, Jr.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (B), (O) (2006).

## I

In February 2009, the Debtor engaged Lewis King to represent him in prosecuting an inverse condemnation action against Knoxville's Community Development Corporation (KCDC) and the City of Knoxville regarding property owned by the Debtor on West Jackson Avenue, Knoxville, Tennessee (collectively West Jackson Avenue Properties). COLL. TRIAL EX. 1. Under the terms of the Engagement Letter entered into between the Debtor and Lewis King, the parties agreed to the following fee arrangement:

> We agree to represent you on this matter for a contingency fee calculated as follows:

---

[1] The firm is now Lewis, Thomason, King, Krieg & Waldrop, P.C.

> 1. In the event that we obtain a recovery from KCDC and/or the City of Knoxville, we will be paid five percent (5%) of the first $4,200,000.00 we recover for you. A recovery from KCDC and/or the City of Knoxville would include any amount that may be deposited into Court by KCDC and/or the City of Knoxville in connection with any direct condemnation that one or both of those entities may file in an effort to acquire your property. If funds are deposited into Court by KCDC and/or the City of Knoxville you agree that you will withdraw said funds from Court and the said withdrawal will be deemed a recovery for the purpose of this agreement. You also agree that any fee paid to us out of the withdrawn funds will not be refundable. Should it be necessary for us to file an inverse condemnation action on your behalf, any amount awarded to you in such an action would also be a recovery from KCDC and/or the City of Knoxville.
>
> 2. In addition to the amount provided for in paragraph 1 of this section, we will be paid thirty-three and one-third percent (33 1/3%) of any amount over $4,200,000.00 that we recover for you from KCDC and/or the City of Knoxville. For purpose of this paragraph the term "recovery" will have the same meaning as set out in paragraph 1 of this section.

. . . .

> We have agreed that we will advance all out-of-pocket and other expenses reasonably incurred in the performance of our services (except for a real estate appraiser as set forth below). If the total amount of the expenses exceeds $5,000, we will confer with you concerning expenditures for any expense item that exceeds $500. At the conclusion of this matter, you will reimburse us for any and all costs and expenses advanced. Typical examples include court reporter fees, travel costs, long-distance telephone charges, filing fees, courier charges, fax transmissions, printing, reproduction costs, and computerized research charges. These charges include a component covering our overhead costs for providing these ancillary services. You agree that, should the services of a real estate appraiser be needed in connection with this matter, you will pay directly to that appraiser all of his/her charges and expenses of any kind.

COLL. TRIAL EX. 1. With respect to termination of employment, the terms of engagement provide

the following:

> You may terminate our representation at any time, with or without cause, by notifying us. If such termination occurs, your papers and property will be returned to you promptly upon request. We will retain our own files pertaining to the matters on which we have worked. Your termination of our services will not affect your

3

> responsibility for payment of legal services rendered and out-of-pocket costs incurred by us in connection with this matter.
>
> We are subject to the Tennessee Code of Professional Responsibility, which lists several types of conduct or circumstances that require or allow us to withdraw from representing a client, including nonpayment of fees or costs, misrepresentation or failure to disclose material facts, action contrary to our advice, and conflict of interest with another client. We try to identify in advance and discuss with our clients any situation that may lead to our withdrawal, and, if withdrawal ever becomes necessary, we immediately give the client written notice of our withdrawal.

COLL. TRIAL EX. 1. Additionally, the Engagement Letter states that Lewis King performed a conflict of interest investigation and had, at that time, not identified any conflicts; however, in the event that a conflict of interest arose in the future, "we might be prohibited by ethical rules from representing either side, without the informed consent of both parties." COLL. TRIAL EX. 1.

On February 26, 2009, Lewis King filed a Complaint and Petition for Inverse Condemnation (Complaint) in the Circuit Court for Knox County, Tennessee, initiating the action styled *Mark D. Saroff v. Knoxville's Community Development Corporation and the City of Knoxville, Tennessee*, Case. No. 1-86-09 (Circuit Court Lawsuit), raising issues of first impression under Tennessee inverse condemnation statutes and the Tennessee Constitution. TRIAL EX. 30. Following the filing of the Complaint initiating the Circuit Court Lawsuit, KCDC and the City of Knoxville filed a motion to dismiss, to which the Debtor filed a motion for partial summary judgment. TRIAL EXS. 45, 46. The court converted the previously filed motion to dismiss to one for summary judgment, which resulted in the Debtor filing, *inter alia*, two affidavits executed by the Debtor with supporting exhibits and briefs concerning statutes of limitations and constitutional and statutory takings issues. TRIAL EXS. 47-50, 54-58. Both motions were subsequently denied, and it was determined that the Circuit Court Lawsuit would proceed to trial. TRIAL EX. 60.

During the pendency of the Circuit Court Lawsuit, the Debtor's bankruptcy case was commenced by the filing of an Involuntary Petition under Chapter 7 on July 6, 2009. After a contested hearing, the court entered an Order for Relief under Chapter 7 on February 24, 2010, and the Chapter 7 Trustee was appointed. TRIAL EX. 7. On January 19, 2010, prior to entry of the Order for Relief, Lewis King filed a Notice of Attorneys Fee Lien in the Circuit Court Lawsuit which was recorded with the Register of Deeds for Knox County, Tennessee, on the same date. COLL. TRIAL EX. 1. Thereafter, the Chapter 7 Trustee sought to retain Lewis King to represent him in his prosecution of the Circuit Court Lawsuit on behalf of the bankruptcy estate. COLL. TRIAL EX. 29. However, because of a conflict of interest and the inability of Lewis King to obtain a waiver from the Debtor, the Chapter 7 Trustee was not able to employ Lewis King, and it provided no legal services to the estate. Thereafter, pursuant to an Order entered on December 27, 2011, the Chapter 7 Trustee employed Richard L. Hollow and the law firm of Hollow & Hollow as special counsel to represent him in prosecuting the Circuit Court Lawsuit. TRIAL EX. 9. Lewis King subsequently withdrew from its representation of the Plaintiff in the Circuit Court Lawsuit. TRIAL EX. 36; TRIAL EX. 67. On December 7, 2010, Lewis King filed a secured claim in the amount of $175,365.13 asserting a lien on real estate by way of its attorney's lien recorded with the Knox County Register of Deeds. COLL. TRIAL EX. 1.

In late 2011, KCDC and the City of Knoxville served interrogatories and requests for production of documents upon the Debtor in the Circuit Court Lawsuit, after which the Chapter 7

Trustee filed an objection and a motion for protective order on January 12, 2012.[2] TRIAL EX. 31. The following day, the Debtor, through Lewis King, filed an objection and motion for protective order in which he adopted the Chapter 7 Trustee's objection and motion. TRIAL EX. 32. A hearing was held on January 17, 2012, after which Knox County Circuit Court Judge Dale Workman entered an Order on February 2, 2012, finding that the Circuit Court Lawsuit "is a chose of action of Plaintiff's bankruptcy estate" and directed the Debtor "to file a written designation with the Court stating whether he wants an attorney to represent any interest he might have individually and separately from the bankruptcy estate's interest in this lawsuit." TRIAL EX. 33. Following entry of this order, the Chapter 7 Trustee filed a Motion for Leave to Intervene as the real party in interest in the Circuit Court Lawsuit on February 21, 2012. TRIAL EX. 35. Additionally, in response to the February 2, 2012 Order, KCDC and the City of Knoxville filed a motion to reconsider, asking the Circuit Court to find that the Debtor lacked standing to proceed separately from the bankruptcy estate, prompting the Debtor to file a response in opposition on June 14, 2012, which was, again, filed through Lewis King as his counsel. TRIAL EX. 34; TRIAL EX 38. On June 15, 2012, Judge Workman issued a Memorandum Opinion finding that the Debtor did, in fact, lack standing to participate in the Circuit Court Lawsuit, substituting the Chapter 7 Trustee as the party in interest, and finding that Lewis King no longer had standing to proceed in the case unless the Chapter 7 Trustee hired the firm to represent him. COLL. TRIAL EX. 39. The Debtor, *pro se*, filed a Notice of Appeal of the standing determination on September 28, 2012. TRIAL EX. 43.

---

[2] This objection was filed by Mr. Hollow on behalf of the "Plaintiff" before the Chapter 7 Trustee intervened in the Circuit Court Lawsuit. The objection, therefore, appears to have been filed in favor of the Debtor when, in fact, it was filed in behalf of the Chapter 7 Trustee.

Following mediation in June 2013, the Chapter 7 Trustee filed the Motion for Approval of Settlement of Claim and for Approval to Sell Real Property Free and Clear of Liens (Motion to Sell Free and Clear) on August 14, 2013, seeking approval of a settlement in which, in final resolution of the Circuit Court Lawsuit, KCDC and the City of Knoxville would remit $1,450,000.00, representing a property purchase price of $1,200,000.00, prorated 2013 city and county taxes of $1,304.98, and $250,000.00 for the condemnation lawsuit, to the Chapter 7 Trustee in exchange for all right, title and interest in the West Jackson Avenue Properties. TRIAL EX. 17. After a two-day trial of the Motion to Sell Free and Clear, an order was entered on October 28, 2013, approving the settlement. TRIAL EX. 18. The sale of the West Jackson Avenue Properties proceeded on November 13, 2013. TRIAL EX. 68. That same date, a Stipulation of Dismissal With Prejudice was filed in the Circuit Court Lawsuit. TRIAL EX. 65.

The Chapter 7 Trustee filed the Objection to Claim on November 5, 2013, arguing that Lewis King has no basis for a secured claim since its attorney's lien was filed post-petition and, because the legal fee was owed on a contingency basis, Lewis King is entitled only to its actual expenses of $2,272.13 as an unsecured claim. Pursuant to the Amended Order entered on December 10, 2013, the issues before the court are: (1) whether Lewis King is entitled to receive any compensation for pre-petition legal services; (2) if Lewis King is entitled to a claim, in what amount; and (3) if Lewis King is entitled to a claim, whether the claim should be allowed as secured under Tennessee's Attorney Lien Statute, Tennessee Code Annotated § 23-2-102, or whether the claim should be allowed as unsecured.

**II**

The first issue is whether Lewis King's proof of claim should be allowed or disallowed. A proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes prima facie evidence as to the claim's validity and amount and is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a) (2006); FED. R. BANKR. P. 3001(f). A claim's validity first stems from the status as a creditor of the debtor, which is defined by the Bankruptcy Code as "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[,]" 11 U.S.C. § 101(10)(A) (2006), whereas "claim" is defined as:

> (A) [the] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) [the] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (2006). In the event of an objection, the objecting party must present evidence rebutting the proof of claim by refuting at least one allegation that is essential to the legal sufficiency of the claim, after which the burden of proof shifts to the claimant to prove the claim's validity by a preponderance of the evidence. *In re Cleveland*, 349 B.R. 522, 527 (Bankr. E.D. Tenn. 2006) (citation omitted).

The Trustee does not dispute that Lewis King is entitled to reimbursement of expenses and/or costs paid on the Debtor's behalf and for which the Debtor remains liable even if he terminated Lewis King's representation. *See* COLL. TRIAL EX. 1 ("Your termination of our services will not

8

affect your responsibility for payment of legal services rendered and out-of-pocket costs incurred by us in connection with this matter."). Accordingly, the expenses in the amount of $2,272.13 incurred by Lewis King during its representation of the Debtor from February 25, 2009, through February 9, 2010, are an allowed pre-petition claim whether or not Lewis King is entitled to payment of any legal fees under the contingency fee agreement or through quantum meruit.

Acknowledging that Lewis King commenced the Circuit Court Lawsuit and performed services pre-petition, the Chapter 7 Trustee nonetheless argues that Lewis King is not entitled to any compensation under the fee agreement with the Debtor because it played no part in the subsequent settlement reached with KCDC and the City of Knoxville. The court disagrees. Lewis King performed considerable services on behalf of the Debtor – substantially all of which benefitted the bankruptcy estate. The attorneys with Lewis King who primarily handled the Circuit Court Lawsuit, John Britton and John Buckingham, possess considerable knowledge and expertise in the area of condemnation and inverse condemnation, and the claims presented by them in the Circuit Court Lawsuit in the Debtor's behalf raised issues of first impression in the State of Tennessee. Among other things, these attorneys researched complicated inverse condemnation issues, prepared and filed the Circuit Court Lawsuit, defended a motion to dismiss that was converted to one under summary judgment filed by KCDC and the City of Knoxville, prepared affidavits for the Debtor's signature with supporting exhibits, and drafted and argued a motion for partial summary judgment. *See* TRIAL EX. 6. There is also no dispute that following his appointment, the Chapter 7 Trustee sought to employ Lewis King as special counsel to represent him in the bankruptcy estate's continued prosecution of the Circuit Court Lawsuit. Lewis King was advised, however, that it would be a

conflict of interest requiring it to obtain a waiver from the Debtor. The waiver was not forthcoming, and Lewis King could not represent the Chapter 7 Trustee. It then filed a motion to withdraw as counsel for the Debtor in the Circuit Court Lawsuit which was granted by the Circuit Court in September 2012, following a determination on June 15, 2012, that "Mr. Britton has no further standing in the case." COLL. TRIAL EX. 39.

"It is well settled in Tennessee that a client has a right to discharge his attorney with or without cause." *Adams v. Mellen*, 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981). "[C]lients can discharge a lawyer at any time regardless of cause and regardless of any contract between the client and the lawyer. However, upon discharge, the attorney is entitled to just and adequate compensation for services rendered." *Hill Boren, P.C. v. Paty, Rymer & Ulin, P.C.*, 2013 WL 1136540, at *7, Tenn. App. LEXIS 184, at *21 (Tenn. Ct. App. Mar. 19, 2013) (citations and quotation marks omitted). "Where the attorney is discharged without cause, he or she is entitled to collect on the basis of quantum meruit or the contract price, whichever is greater. In contrast, if the client had cause to terminate, recovery for the attorney is governed by the lesser of quantum meruit or the contract price." *Mitch Grissim & Assoc. v. Blue Cross & Blue Shield of Tenn.*, 114 S.W.3d 531, 536 (Tenn. Ct. App. 2002) (citations omitted).[3] As discussed, the fee agreement between the Debtor and Lewis King provided that the law firm would still be entitled to receive payment of the legal services performed even in the event of termination. It is undisputed that Lewis King withdrew from its

---

[3] "Recovery under a theory of quantum meruit is 'based on a legally implied promise to pay a reasonable amount for goods or services received,' and is therefore limited to the actual value of the goods or services received." *Mitch Grissim & Assoc.*, 114 S.W.3d at 537 (quoting *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995) (citations omitted)). "A recovery in *quantum meruit* is limited to the actual value of the services rendered. . . . . Tennessee law is clear that an award in *quantum meruit* is not to be determined by the value of the services to the one who performs the services, but instead, should be based on the *value of the benefit conferred*." *Johnson v. Hunter*, 2001 WL 1285886, at *6, 2001 Tenn. App. LEXIS 795, at *18-19 (Tenn. Ct. App. Oct. 25, 2001).

employment of the Debtor following the Debtor's intervening involuntary bankruptcy case and the subsequent determination by Judge Workman that neither the Debtor nor his attorneys had standing to continue litigating the Circuit Court Lawsuit. The court finds this withdrawal as a result of the conflict of interest being akin to termination of representation for cause rather than a termination without cause. As such, Lewis King is entitled to an allowed claim for the lesser of the contingency fee or quantum meruit. Lewis King has provided the quantum meruit figure, $172,593.00, in its proof of claim and in its time records. COLL. TRIAL EX. 1; TRIAL EX. 6. As for the contingency fee, the Chapter 7 Trustee received an overall settlement from KCDC and the City of Knoxville in the amount of $1,450,000.00, five percent of which equals $72,500.00. Accordingly, Lewis King will be entitled to the contingency fee because it is the lesser of the two amounts. The total amount of the claim, however, must still be adjusted based upon equity.

There were instances in which Lewis King's actions representing the Debtor, subsequent to the commencement of his bankruptcy case, were detrimental to the bankruptcy estate, further convincing the court that it should be entitled to the lesser of its contingency fee or quantum meruit. As the Chapter 7 Trustee testified, he was required to file a motion for turnover of records from Lewis King on February 14, 2012, although he did receive the records in March 2012 without hearing, and his motion was withdrawn. TRIAL EX. 10; TRIAL EX. 12. Additionally, and more significantly, Lewis King continued to represent the Debtor outside the bankruptcy case in his efforts to remain a party in interest in the Circuit Court Lawsuit, including opposition to KCDC's and the City of Knoxville's motion to reconsider Judge Workman's determination on February 3, 2012, that the Debtor could potentially remain a party in interest and pursue his own interests individually,

apart from the bankruptcy estate. *See* TRIAL EX. 38. Based upon this opposition, Mr. Hollow, at an expense to the estate of $1,060.00, was required to appear and argue on behalf of the estate that the Chapter 7 Trustee alone was the real party in interest. *See* TRIAL EX. 13. That amount will be deducted from the amount of Lewis King's allowed claim.[4]

In summary, Lewis King is entitled to an allowed claim in the total amount of $73,712.13, representing the five percent contingency fee of $72,500.00, less the $1,060.00 paid to Mr. Hollow to defend an action perpetuated by Lewis King's actions, plus expenses in the amount of $2,272.13.

### III

The remaining issue is whether Lewis King's allowed claim is secured or unsecured. Tennessee's Attorney Lien Statute provides that "[a]ttorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit." TENN. CODE ANN. § 23-2-102 (2009). "While a lawyer's right to compensation remains based on contract, attorney's liens provide security for these contractual rights." *Starks v. Browning*, 20 S.W.3d 645, 650 (Tenn. Ct. App. 1999). Although there are two types of attorney's liens, retaining liens and charging liens, it is a charging lien, which "is based on a lawyer's equitable right to have the fees and costs due for the lawyer's services in a particular action secured by the judgment or recovery in that action . . . [and which] attaches to any proceeds flowing from a judgment, as long

---

[4] The court, through review of Mr. Hollow's time records, determined that three entries expressly addressed the motion to reconsider, the first for a total of 3.4 hours and $680.00 on March 14, 2012, the second for a total of 1.2 hours and $240.00 on June 14, 2012, and the third for a total of 2.4 hours and $480.00 on June 15, 2012. Nevertheless, because the March 14, 2012 entry also includes other matters outside the scope of the motion to reconsider, and Mr. Hollow's time records are lumped such that the actual amount of time spent on each activity is not recorded, the court has divided the time spent and the amount charged for that date by half, resulting in time spent of 1.7 hours and $340.00. TRIAL EX. 13.

12

as the lawyer worked to secure that judgment" that is at issue in this case, in which Lewis King seeks payment for its services. *Starks*, 20 S.W.3d at 650-51.

Lewis King filed a Notice of Attorneys Fee Lien in the Circuit Court Lawsuit which it recorded with the Register of Deeds for Knox County, Tennessee, on January 19, 2010, after the Involuntary Petition commencing the Debtor's bankruptcy case was filed on July 6, 2009. COLL. TRIAL EX. 1. In correspondence from Lewis King to the Chapter 7 Trustee after he requested that the firm release its lien, Lewis King maintained that its lien was properly filed because the inverse condemnation action was exempted from the automatic stay and because, under Tennessee law, the lien related back to the filing of the lawsuit. TRIAL EX. 63. Lewis King is correct that Tennessee law provides for an attorney's lien; however, the act of recording the lien itself, post-petition, violated the automatic stay which prohibits, among other things, "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4) (2006). In the Sixth Circuit, actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993). Nevertheless, the express language of Tennessee Code Annotated § 23-2-102 relates the attorney's lien back to the commencement of the Circuit Court Lawsuit, February 26, 2009, and "[t]here is no requirement that an attorney's lien be noted in a judgment or settlement document to be valid, so long as all affected parties have adequate notice of the lien." *In re Orrick*, 2008 WL 185515, at *2, 2008 Bankr. LEXIS 4954, at *6 (Bankr. E.D. Tenn. Jan. 18, 2008); *Schmitt v. Smith*, 118 S.W.3d 348, 353 (Tenn. 2003) ("[S]o long as adequate notice of the lien is provided to the public and to future purchasers, the requirements of Tennessee Code Annotated [§] 23-2-102 . . . [is] satisfied.

13

We also note, . . . that notice may not be necessary when the dispute is solely between the client and attorney."). The fact that the perfection of the lien may be avoided does not change the fact that the lien was in existence as of February 26, 2009. Accordingly, because Lewis King's attorney's lien is secured by the proceeds derived from the Circuit Court Lawsuit, Lewis King's claim in the amount of $73,712.13 will be allowed as secured, with $71,440.00 representing attorney fees and $2,272.13 representing expenses.[5]

An Order consistent with this Memorandum will be entered.

FILED: March 31, 2014

>                             BY THE COURT
>
>                             /s/ RICHARD STAIR, JR.
>
>                             RICHARD STAIR, JR.
>                             UNITED STATES BANKRUPTCY JUDGE

---

[5] Because "there should be no distinction between compensation for services and expenses necessarily incurred in the rendition of the professional service[,]" Tennessee's Attorney Lien Statute "encompasses expenses directly, necessarily and reasonably incurred by the attorney in the prosecution of the action or claim that has resulted in a recovery for the client." Peoples Nat'l Bank of Wash. v. King, 697 S.W.2d 344, 347 (Tenn. 1985).